**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| WASHINGTON TOWNSHIP BOARD OF EDUCATION, et al., | : | CIVIL ACTION NO. 07-968 (MLC) |
| | : | |
| Plaintiffs, | : | **MEMORANDUM OPINION** |
| | : | |
| v. | : | |
| | : | |
| LUCILLE E. DAVY, COMMISSIONER OF EDUCATION, et al., | : | |
| | : | |
| Defendants. | : | |

**COOPER, District Judge**

Plaintiffs, the Washington Township Board of Education ("Township Board"), the Township of Washington ("Township"), the Township's mayor and council, and certain Township residents and taxpayers (collectively, the "Plaintiffs"), commenced this action against Lucille E. Davy, the New Jersey Commissioner of Education ("Commissioner"), the New Jersey State Board of Education ("State Board"), and the state of New Jersey (collectively, the "Defendants"). (Compl.) Plaintiffs seek a judgment, inter alia, (1) declaring that Defendants' failure to comply with the Comprehensive Educational Improvement and Financing Act of 1996, N.J.S.A. § 18A:7F-1 et seq., ("CEIFA"), violates the Fourteenth Amendment's equal protection clause, (2) directing Defendants to issue and implement new standards, procedures, and rules for evaluating and funding state aid for school districts, (3) directing Defendants to provide appropriate state aid, including

core curriculum aid, to Plaintiffs, and (4) declaring that
Defendants' failure to comply with CEIFA violates both the equal
protection clause and the "thorough and efficient" clause of the
New Jersey Constitution.  (Id.)  Defendants move to dismiss the
complaint pursuant to Federal Rules of Civil Procedure ("Rules")
12(b)(1) and 12(b)(6).  (Dkt. entry no. 9.)  Plaintiffs oppose
the motion.  (Dkt. entry no. 11.)  Further, on June 20, 2007,
this Court issued an Order to Show Cause why we should not
abstain from adjudicating the federal claim contained in count
one of the complaint under Burfurd v. Sun Oil Co., 319 U.S. 315
(1943), and dismiss the remaining claims without prejudice to
reinstate in state court.  (Dkt. entry no. 12.)  Both Plaintiffs
and Defendants responded to the Order to Show Cause.  (Dkt. entry
nos. 15, 17.)  For the reasons stated herein, the Court will (1)
grant the Order to Show Cause, (2) abstain from adjudicating the
federal claim contained in count one of the complaint, (3)
dismiss the remaining state claims without prejudice to reinstate
in state court, and (4) deny Defendants' motion as moot.

**BACKGROUND**

**I.   District Factor Groups**

The New Jersey Department of Education ("DOE") designates
each school district as a District Factor Group ("DFG").  (Compl.,
at ¶ 35.)  A DFG classification is based on a district's relative
socioeconomic status.  (Id. at ¶ 36.)  The DFG classification

2

system enables the DOE to examine student achievement and compare similarly situated school districts.  (Id.)  The DFGs range from "A", denoting a poorer district entitled to more state funding, to "J", denoting a wealthier school district entitled to less state funding.  New Jersey Dep't of Educ., http://www.state.nj.us/ education/finance/sf/dfg.shtml.  The Township Board is classified as an "I" district.  (Compl., at ¶ 35.)

## II.  CEIFA

### A.  Overview

CEIFA was enacted in 1996 to govern academic standards and state funding for New Jersey's public school system.  Bd. of Educ. of Millville v. N.J. Dep't of Educ., 183 N.J. 264, 269 (2005).[1]  CEIFA established, inter alia, "[a] definition of a thorough and efficient system of public education which is uniformly applicable to all districts in the [state of New Jersey] and specifies what must be learned with reference to academic standards that must be achieved by all students."

---

[1] Over the course of more than 30 years of litigation, the New Jersey Supreme Court found that each of the following successive laws were unconstitutional as applied to the poorest urban school districts: (1) the State School Incentive Equalization Aid Law (1970), (2) the Public School Education Act of 1975, (3) the Quality Education Act of 1990, and finally (4) CEIFA.  See Abbott v. Burke, 170 N.J. 537, 541 (N.J. 2002).  The New Jersey Supreme Court found that each of these statutes failed to provide a level of funding "adequate to provide for the special needs of these poorer urban districts, and address their extreme disadvantages."  Id.  Thus, the New Jersey legislature has been dealing with issues related to state funding for public education for many years.

N.J.S.A. § 18A:7F-2(b)(1).  It describes programs and services intended to accomplish "thorough and efficient education", as well as the level of financial support needed for such programs and services.  N.J.S.A. § 18A:7F-2(b)(2)-(3).  Accordingly, CEIFA created several different types of aid for school districts, including core curriculum standard aid ("CCSA").  See N.J.S.A. § 18A:7F-11.

CEIFA provides that each school district's share of CCSA is calculated using a set formula that is predicated on the district's property wealth and income.  N.J.S.A. § 18A:7F-14. From CEIFA's enactment in 1996 until fiscal year 2002, the Township Board received CCSA in accordance with this funding formula.  (Compl., at ¶ 22.)  However, since fiscal year 2002, New Jersey has ceased using CEIFA's aid formulas, including the CCSA formula.  (Id. at ¶ 23.)  Instead, "state aid has been awarded for the last four years strictly on the basis of appropriations made by the Legislature that have been based on percentage increases added to the state aid awards that were calculated under CEIFA in the first year of its operation." (Id.)  According to Plaintiffs, the legislature's appropriations have not accounted for significant increases and decreases in student enrollment or costs necessary to meet educational standards that are presently in effect.  (Id. at ¶ 24.) Plaintiffs note that despite increased student enrollment, the

4

Township Board has received no CCSA for the 2004-2005, 2005-2006, and 2006-2007 school years.  (Id. at ¶ 26.)  They assert that "[b]ecause the State has not followed the CEIFA formula, there appears to be no rational means by which the Defendants have distributed [CCSA]."  (Id. at ¶ 48.)

**B.    Suspension of CEIFA**

The New Jersey Appellate Division, in Hammonton Board of Education v. New Jersey Department of Education, concluded that the New Jersey legislature's fiscal year 2003 appropriations act effectively suspended CEIFA for that year.  No. A-3836-01T5, slip op. at 18 (N.J. App. Feb. 24, 2004).  There, the plaintiff, the Hammonton Board of Education, filed a complaint in lieu of prerogative writ and an order to show cause in the New Jersey Superior Court against the DOE, the Commissioner, then Governor James McGreevey, and the New Jersey legislature.  Id. at 3.  The Commissioner had advised the DOE that state aid figures for the 2002-2003 fiscal year would likely be the same as the previous fiscal year, and thus, the CEIFA formulas would not be utilized. Id. at 5.  The plaintiff sought, inter alia, to compel the defendants to calculate state aid according to the formulas set forth in CEIFA.  Id. at 4.

The defendants moved to dismiss the complaint.  Id. at 6. The New Jersey Superior Court found that it lacked jurisdiction over the action because "appeals from state agency action or

inaction are traditionally filed before the Appellate Division"
and "since the funding process had not yet been completed, there
was no 'final agency action' to transfer to the Appellate
Division." Id.  The plaintiff filed applications seeking
emergency relief from the Superior Court's ruling with the New
Jersey Appellate Division and Supreme Court, but they were both
denied.  Id.  The plaintiff then filed a verified petition with
the Commissioner, which was transferred to the Office of
Administrative Law.  Id.  Thereafter, the New Jersey legislature
enacted the Fiscal Year 2003 Appropriations Act ("FY03"), which
contained figures consistent with the Commissioner's previous
estimates.  Id. at 7.  While plaintiff's verified petition of
appeal was pending before an administrative law judge,
plaintiff's appeal from the Superior Court's ruling came before
the New Jersey Appellate Division.  Id. at 6-7.

The Appellate Division noted that there had not been a final
agency action, and the matter was not suitable for mandamus.  Id.
at 8.  It determined that in accordance with the New Jersey court
rules as well as the "exhaustion doctrine", it should abstain
from addressing the issues on appeal because the matter was still
pending in an administrative agency.  Id. at 9.  The court
explained that, inter alia, (1) "the conflict at hand has serious
implications and involves intersection, if not the collision, of
all branches of our government", and (2) the DOE has the

"machinery" to create a record for appeal.  Id. at 11.  It
further explained:

> [S]chool districts may apply to the [DOE] for
> authorization to . . . seek the necessary funding.  An
> aggrieved applicant may appeal to the Commissioner from
> an adverse decision on any such application made to the
> [DOE].  If the dispute is not resolved or if the
> applicant is not satisfied with the disposition, the
> case may be transferred under the Administrative
> Procedure Act to the Office of Administrative Law as a
> contested case.  It is only after the final
> determination of the Commissioner, upon recommendation
> of an administrative law judge, that either party may
> appeal to the State Board of Education, and finally to
> this court.

Id. at 11-12.

The court also discussed the substantive reasons underlying
its decision to abstain.  Id. at 13.  It stated that "[t]he
extent to which funds 'are available to meet the standard of need
under New Jersey statutes is a political question to be decided
by the representatives of the people.'"  Id. at 14.  Further, the
court stated that even when the legislature mandates a particular
program, such program is still subject to the annual
appropriations act.  Id. at 15.  Thus, it explained that the
courts cannot compel a requested appropriation even if there is a
statutorily defined right to such funds.  Id.  The court also
noted that the New Jersey Constitution prohibits the legislature
from incurring any debt that a subsequent legislature would be
required to pay.  Id. at 17.  Against this backdrop, the court
concluded that the legislature intended to reduce aid in

consideration of budget limitations when it passed FY03, and thus, suspended CEIFA.  Id. at 18.[2]

### C.    Movement Toward Replacing CEIFA

The State Board, in Bacon v. New Jersey Department of Education, acknowledged that CEIFA's funding formulas were not being applied.  No. 4-03, slip. op. at 26 (N.J. Bd. of Educ. Jan. 4, 2006).  There, the State Board addressed multiple appeals from a decision of the Commissioner, which adopted certain determinations of an administrative law judge and rejected others.  Id. at 8-11.  The "overarching question [before the State Board was] whether CEIFA as applied has fulfilled the constitutional imperative of providing a thorough and efficient system of free public schools for instruction of all children in the state."  Id. at 14.  The appellant school districts contended that unlike New Jersey's wealthier school districts, they could not meet the educational needs of their students by relying on property taxes alone to generate adequate per pupil expenditures. Id. at 25-26.  Thus, they argued that the state must provide more financial resources to their school districts than it provides to the wealthier school districts.  Id.

---

[2] The court specifically determined that the following language in FY03 effectively suspended CEIFA: "Notwithstanding any other law or regulation to the contrary, each district shall receive . . . total state aid [as] payable for the 2001-2002 school year."  Id. (alteration in original).

The State Board, in addressing the appellant districts' arguments, noted that

> for the last four years, the amount of state aid that ha[d] been awarded to New Jersey's school districts ha[d] not been determined by applying the formulas set forth in CEIFA's statutory provisions.  Had the formulas been applied, state aid would have been based on the calculation of the cost of providing the actual number of students enrolled in a given school district with educational inputs which correlated with the educational standards established under CEIFA. . . . Rather, state aid has been awarded for the last four years strictly on the basis of appropriations made by the Legislature that have been based on percentage increases added to the state aid awards that had been calculated under CEIFA in the first year of its operation.

Id. at 26.  Further, the State Board concluded, inter alia, that the students in the appellant school districts were not being (1) afforded a thorough and efficient education, (2) offered an adequate breadth of programming, and (3) offered programs necessary to address the socioeconomic conditions they confront. Id. at 40-41, 43.  Thus, the State Board determined that "despite the gains made under CEIFA, its implementation has not resulted in the provision of a thorough and efficient education to the students of the districts involved in th[e] appeal either in terms of absolute adequacy or in comparison with the wealthier suburban districts."  Id. at 58

The State Board acknowledged that only the courts have jurisdiction to determine the constitutionality of CEIFA, and only the legislature has the power to direct that additional

resources be provided to a particular school district.  Id. at 58-59.  Also, it stated that ensuring that the students in the appellant school districts receive a thorough and efficient education could not be accomplished by simply granting monetary relief to the districts.  Id. at 62.  Accordingly, it directed the DOE, under the Commissioner's supervision, to develop a design for a needs assessment to be performed in each of the school districts at issue.  Id. at 63.  In light of the issues and concerns raised by this appeal, the State Board ultimately determined that "it is time for a new approach" because CEIFA does not permit individualized assessment and "makes any real fiscal accountability impossible".  Id. at 67-68.  It explained that it "must take responsibility for redefining the meaning of a thorough and efficient education in educational rather than financial terms", but acknowledged that it cannot change the system by itself.  Id. at 69.  Therefore, the State Board committed itself to initiating the first steps toward moving away from the CEIFA model and effectuating changes necessary to establish a unified public education system "that fulfills the constitutional mandate both with respect to the substantive education that must be provided and the resources necessary to support such a system."  Id. at 72.

**DISCUSSION**

I.   **Legal Standards**

A.   **Rule 12(b)(6)**

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6). On a motion to dismiss, a court generally must accept as true all of the factual allegations in the complaint, and must draw all reasonable inferences in favor of the plaintiff.  Cal. Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 134 (3d Cir. 2004); Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001).  However, a court need not credit bald assertions or legal conclusions alleged in the complaint.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Here, Plaintiffs argue that Defendants rely "upon generalities, taken out of context in disregard of variant facts" and "the complaint alleges an equal protection violation sufficient to withstand a motion to dismiss."  (Pl. Br., at 29-30.)

The Court, when considering a motion to dismiss, may generally not "consider matters extraneous to the pleadings."  In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426. However, if the Court exercises discretion and permits a party to present matters outside the pleadings, the Court must (1) convert the motion to dismiss into one for summary judgment, and (2) allow the parties a reasonable opportunity to present all

11

material pertinent to such a motion under Rule 56.  See
Fed.R.Civ.P. 12(b).  An exception to this general rule is that
the Court may consider (1) exhibits attached to the complaint,
(2) matters of public record, and (3) all documents that are
integral to or explicitly relied upon in the complaint without
converting the motion to dismiss into one for summary judgment.
Angstadt v. Midd-West Sch. Dis., 377 F.3d 338, 342 (3d Cir. 2004).

**B.   Rule 12(b)(1)**

A defendant may move to dismiss a claim for lack of subject
matter jurisdiction under Rule 12(b)(1).  Fed.R.Civ.P. 12(b)(1).
Such motion may be made at any time.  Iwanowa v. Ford Motor Co.,
67 F.Supp.2d 424, 437-38 (D.N.J. 1999).  The defendant may
facially challenge subject matter jurisdiction by arguing that
the complaint, on its face, does not allege sufficient grounds to
establish subject matter jurisdiction.  Id. at 438.  Under this
standard, the Court assumes that the allegations in the complaint
are true, and may dismiss the complaint only if it appears to a
certainty that the plaintiff will not be able to assert a
colorable claim of subject matter jurisdiction.  Cardio-Med.
Assoc., Ltd. v. Crozer-Chester Med. Ctr., 721 F.2d 68, 75 (3d
Cir. 1983); Iwanowa, 67 F.Supp.2d at 438.

A defendant can also attack subject matter jurisdiction by
factually challenging the jurisdictional allegations set forth in
the complaint.  Iwanowa, 67 F.Supp.2d at 438.  Under this

standard, "no presumptive truthfulness attaches to plaintiff's allegations and the existence of disputed material facts will not preclude the Court from evaluating for itself the merits of jurisdiction claims." Pashun v. Modero, No. 92-3620, 1993 U.S. Dist. LEXIS 7147, at *6 (D.N.J. May 26, 1993).  The Court may consider affidavits, depositions, and testimony to resolve factual issues and is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. Iwanowa, 67 F.Supp.2d at 438.  The defendant may factually attack subject matter jurisdiction at any stage in the litigation, including before the answer has been filed.  Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir. 1990) (explaining that a defendant may factually attack subject matter jurisdiction before filing an answer); see Pashun, 1993 U.S. Dist. LEXIS 7147, at *6.

### C.  **Burford** Abstention

The abstention doctrine is a narrow and extraordinary exception to the Court's obligation to exercise its jurisdiction and adjudicate controversies properly before it.  Rucci v. Cranberry Twp., 130 Fed.Appx. 572, 576 (3d Cir. 2005). Accordingly, abstention is only appropriate under certain limited circumstances.  Hi Tech Trans, LLC v. N.J. Dep't of Envtl. Prot., 382 F.3d 295, 303 (3d Cir. 2004).  One such circumstance was articulated in Burford v. Sun Oil Co., 319 U.S. 315 (1943).

Under Burford, "a district court may decline to exercise or postpone jurisdiction, even diversity jurisdiction, where a difficult question of state law is presented which involves important state policies or administrative concerns." Rucci, 130 Fed.Appx. at 577 (internal quotations omitted) (holding that the district court's decision to abstain from purely state law challenges to Pennsylvania's Municipal Planning Code and eminent domain procedures was not an abuse of discretion).  More specifically, Burford stated that a federal court should not exercise its jurisdiction if (1) doing so would interfere with a state's efforts to regulate an area of law predominated by state interests, and (2) adequate and timely state review of the regulatory scheme at issue is available.  Hi Tech Trans, LLC, 382 F.3d at 303.  The purpose of Burford abstention is to avoid intrusion by a district court into a matter of local concern that is within the special competence of local courts.  Id. at 303-04; Chiropractic Am. v. LaVecchia, 180 F.3d 99, 104 (3d Cir. 1999).

Therefore:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,
491 U.S. 350, 361 (1989) (internal quotations omitted);
LaVecchia, 180 F.3d at 104.  However, Burford abstention
"appl[ies] without regard to the existence of an ongoing
proceeding."  Stoe v. Flaherty, 436 F.3d 209, 213 (3d Cir. 2006).

## II.  Legal Standards Applied Here

Plaintiffs argue that state court review of their claims
would not be timely or adequate because, inter alia, New Jersey
Court Rule 2:2-3 permits only review of final decisions or
actions by state administrative agencies or officers, and actions
similar to this action have not been permitted to proceed under
this rule.  (Pl. Resp. to OTSC, at 7-8.)  Plaintiffs also argue
that administrative review of their claims is not available
because the Commissioner and State Board "have been downright
hostile toward similar challenges."  (Id.)  Further, Plaintiffs
assert that "it is virtually indisputable that Defendants have
failed to distribute aid on an equitable basis, either pursuant
to the state's statutory funding formula or in some other
fashion", and thus, this case does not involve complicated
interpretations of state law.  (Id. at 11 (stating that the Court
can adjudicate the federal claim even without having any
technical knowledge of CEIFA's formulas).)  Therefore, Plaintiffs
contend that Burford abstention is not appropriate here.  (See
id. at 13.)

15

Defendants, in contrast, argue that <u>Burford</u> abstention is necessary because timely and adequate state proceedings are available to address the relief sought.  (Defs. Resp. to OTSC, at 3.)  Specifically, Defendants assert that the New Jersey Administrative Code sets forth the procedure for seeking review of a departmental action, and the New Jersey Court Rules permit a party to appeal the final action of any state administrative agency to the New Jersey Appellate Division.  (<u>Id.</u> at 4-5.)  Moreover, Defendants argue that (1) "this matter concerns difficult questions of State law and policy that are of great import to the citizens of New Jersey", and (2) federal review of this matter would interfere with the state's ability to maintain a coherent regulatory framework with respect to public school funding.  (<u>Id.</u> at 6, 9.)  Thus, Defendants contend that the Court should abstain from hearing this action and dismiss the complaint.  (<u>Id.</u> at 12.)

The Court finds that <u>Burford</u> abstention is appropriate here. Timely and adequate state court review has been and continues to be available to Plaintiffs.  Specifically, Plaintiffs can appeal any adverse decision of the DOE pertaining to their requests for additional funding to the Commissioner, and any such appeal may be transferred to the Office of Administrative Law for hearing. <u>See</u> N.J.A.C. §§ 6A:3-1.3, 6A:3-1.11; <u>see also</u> <u>Hammonton Bd. of Educ.</u>, slip. op. at 11.  If Plaintiffs are dissatisfied with the

16

Commissioner's determination, which may incorporate the
recommendations of an administrative law judge, then they may
appeal to the State Board, which must make a final determination
by resolution at an open public meeting that is later embodied in
a written opinion.  See N.J.A.C. §§ 6A:4-1.1, 6A:4-3.4; see also
Hammonton Bd. of Educ., slip. op. at 11-12.  Finally, Plaintiffs
may appeal as of right to the New Jersey Appellate Division from
the State Board's final determination.  See N.J.Ct.R. 2:2-
3(a)(2).  Plaintiffs' conclusory assertions that there are no
reported decisions where a township, board of education, or
taxpayer were "allowed to maintain an action" under New Jersey
Court Rule 2:2-3, and that the Commissioner and State Board "have
been downright hostile" do not obviate the availability of the
procedures discussed above.  (See Pl. Resp. to OTSC, at 7-8.)
Thus, this Court concludes that Plaintiffs have not demonstrated
the absence of timely and adequate state court review of the
matters at issue here.

       This Court also concludes that this action involves
difficult questions of state law and implicates important state
policies.  Plaintiffs seek a judgment, inter alia, directing
Defendants to (1) issue and implement new detailed standards and
rules for evaluating and funding state aid to school districts,
and (2) provide them with state aid, including CCSA, in
accordance with CEIFA.  (Compl., at 12.)  Accordingly, this

17

action clearly involves a matter of substantial public concern, state aid and funding for the state's public education system. See Parents Involved in Comty. Sch. v. Seattle Sch. Dist., 127 S.Ct. 2738, 2801 (2007) (noting that "education is perhaps the most important function of state and local governments").

CEIFA contains complex formulas and interrelated provisions describing the various types of state education aid available, the formulas for calculating the appropriate amount of such aid, and the requirements that must be met to be entitled to such aid. See LaVecchia, 180 F.3d at 106 (acknowledging, for purposes of Burford abstention, that the legislature and Commissioner had promulgated a complex solution to New Jersey's no-fault automobile insurance problem).  Moreover, CEIFA has been suspended by the legislature on a yearly basis since 2002. (Defs. Resp. to OTSC, at 8.)  In fact, the Appropriations Act for Fiscal Year 2008 has again suspended CEIFA.  (Id. (stating that the New Jersey legislature suspended the CEIFA funding formula in the Appropriations Act for Fiscal Year 2008).)[3]  The legislature undoubtedly weighed numerous budgetary considerations as well as

---

[3] Defendants specifically stated that the following statement in the Appropriations Act for Fiscal Year 2008 effectively suspended CEIFA: "Notwithstanding the provision of any law or regulation to the contrary each district shall receive no less of a total State aid amount payable for the 2007-2008 school year than the sum of the district's total State aid amount payable for the 2006-2007 school year."  (Id.)  See Hammonton Bd. of Educ., slip. op. at 18 (stating that nearly identical language effectively suspended CEIFA for the 2002-2003 school year).

the New Jersey Constitution's prohibition against the legislature
incurring any debt that a subsequent legislature would be
required to pay off, before deciding to suspend CEIFA.  See
Hammonton Bd. of Educ., slip. op. at 17-18.  Therefore, the
legislature and State Board's current approach to education
funding is "the sort of complex technical regulatory scheme to
which the Burford abstention doctrine usually is applied."
LaVecchia, 180 F.3d at 105.

     If the Court were to grant the relief sought by Plaintiffs,
it would interfere with the state's efforts to establish and
maintain a coherent policy with respect to this complex
regulatory scheme.  See id.  Specifically, addressing the federal
constitutional questions involved in this action would require
the Court to perform an in-depth analysis of both the New Jersey
legislature's appropriations decisions as well as the legislative
purposes underlying CEIFA.

     The New Jersey Appellate Division, in Hammonton Board of
Education, determined that it must abstain from hearing a case in
which the plaintiff sought to compel the New Jersey legislature
and the Department of Education, among others, to recalculate
state aid according to CEIFA.  Slip op. at 4.  Moreover, in
Bacon, the State Board noted that CEIFA has not resulted in the
provision of a thorough and efficient education to students in
many districts, but also stated that ensuring that students

19

receive a thorough and efficient education could not be
accomplished by simply granting monetary relief to those
districts.  Slip. op. at 58, 62.  Thus, the State Board directed
the DOE to develop a design for a needs assessment to be
performed in each of the school districts at issue, and
ultimately committed itself to initiating the first steps toward
moving away from the CEIFA model.  <u>Id.</u> at 63, 72.  The State
Board vowed to effectuate changes necessary to establish a
unified public education system "that fulfills the constitutional
mandate both with respect to the substantive education that must
be provided and the resources necessary to support such a
system."  <u>Id.</u> at 72.  Thus, this Court's review of Plaintiffs'
claims would directly interfere with New Jersey's efforts to
assess the needs of its school districts and create a new model
that would replace CEIFA, which does not permit individualized
assessment and "makes any real fiscal accountability impossible",
with a model that redefines the meaning of thorough and efficient
education in educational rather than financial terms.  <u>See</u> <u>Bacon</u>,
slip. op. at 67-69.

    The Court, therefore, finds that <u>Burford</u> abstention is
appropriate on the federal claim contained in count one of the
complaint because (1) timely and adequate state court review is
available, and (2) our review of this matter would interfere with
New Jersey's efforts to regulate an area predominated by state

interests, state aid for public education.  See Hi Tech Trans, LLC, 382 F.3d at 303.  In light of this holding, we need not address whether we have subject matter jurisdiction over Plaintiffs' federal equal protection claim pursuant to Rule 12(b)(1) or whether the underlying merits of that claim warrant dismissal pursuant to Rule 12(b)(6).  Also, the Court will not exercise supplemental jurisdiction over Plaintiffs' state claims in view of our decision to abstain from adjudicating the federal claim.  See 28 U.S.C. § 1367(c)(3) (authorizing same).

## CONCLUSION

The Court, for the reasons stated supra, will (1) grant the Order to Show Cause, (2) abstain from adjudicating the federal claim contained in count one of the complaint, (3) dismiss the remaining state claims without prejudice to reinstate in state court, and (4) deny Defendants' motion as moot.  The Court will issue an appropriate order and judgment.

    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge